UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| MARYBELLE CHANDLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO. 3:13-cv-200-WTL-WGH |
| ) | |
| MEETING & EVENTS ) | |
| INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendant's Motion for Summary Judgment (Dkt. No. 31) and the Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 39). The motions are fully briefed, and the Court, being duly advised, **GRANTS IN PART** the Defendant's motion and **DENIES** the Plaintiff's motion for the reasons, and to the extent, set forth below.

### I. STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party

bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

The fact that the parties have filed cross-motions for summary judgment does not alter the standard set forth in Federal Rule of Civil Procedure 56. When evaluating each side's motion, the Court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Metro Life. Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## II. BACKGROUND

Defendant Meetings & Events International, Inc. ("MEI") was founded in 1984 by Teresa Hall; it specializes in providing logistical support to medical professionals needing to plan events and also provides reporting services for its clients. Plaintiff Marybelle Chandler was hired by MEI in March of 1994; she was fifty-one years old at the time. Ms. Chandler held various positions with MEI; however, at the time of her termination, Ms. Chandler was a receptionist.

In early 2012, MEI experienced a severe decline in business income due, in part, to the passage of the Patient Protection and Affordable Care Act. After attempting to save money and reduce expenses via other means, Hall and her department heads—Jason McDowell, finance, Fred Wix, technology, Brian Kennalley, in-house counsel, and Crissy Kerney, vice president of client services—met in March 2012 to discuss reducing MEI's workforce. It was decided in June 2012 that a reduction in force was necessary. Each department submitted to Hall the names of two or three employees that they recommended for termination.

Thus, on July 27, 2012, Ms. Chandler attended a meeting with Hall and McDowell and was informed that her employment was being terminated due to financial reasons. In all, MEI

terminated eleven individuals due to the reduction in force ("RIF").  After Ms. Chandler was terminated, her receptionist duties were assumed by Beverly Westerman and Nancy Latta.

Ms. Chandler filed a Charge of Discrimination with the EEOC on October 1, 2012, claiming that she was discriminated against based on her age and race.

In early 2013, the financial situation at MEI began to improve, and Hall authorized the department heads to begin rehiring as necessary to meet the demands of MEI's customers. Several individuals were asked to return to their former positions with MEI; however, Ms. Chandler was not called back.  Similarly, MEI posted several open positions on career websites such as Career Builders.  Ms. Chandler applied for a coordinator position in April 2013 through the Career Builders website, but was not interviewed or hired.

Ms. Chandler filed suit in this Court on October 25, 2013.

### III.   DISCUSSION

Ms. Chandler brings two claims in her Amended Complaint:  1) a discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and 2) a retaliation claim pursuant to the ADEA, in violation of 29 U.S.C. § 623(d).[1]  MEI moves for summary judgment on both claims; Ms. Chandler moves for summary judgment on her retaliation claim.  Their arguments are addressed below.

#### A. Age Discrimination

Ms. Chandler alleges that she was terminated because of her age in violation of the ADEA.  Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensations, terms, conditions, or privileges of employment, because of such individual's

---

[1] Ms. Chandler has abandoned her claims for race discrimination.

3

age." 29 U.S.C. § 623(a)(1). To survive a motion for summary judgment on an ADEA discharge claim, a plaintiff must present evidence of intentional discrimination through either the direct or indirect method. *See Oest v. Ill. Dep't. of Corr.*, 240 F.3d 605, 611 (7th Cir. 2001); *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012). Ms. Chandler has elected "to proceed with her age discrimination claim under the burden-shifting framework set out in *McDonnell Douglas*." Pl.'s Br. at 39.

To avoid summary judgment under the indirect method, a plaintiff must offer evidence that: 1) she belongs to a protected class; 2) her performance met her employer's legitimate expectations; 3) she suffered an adverse employment action; and 4) a similarly situated employee not in her protected class received more favorable treatment. *Brummett v. Sinclair Broad. Grp. Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). Once the plaintiff has established her *prima facie* case, the burden shifts to the employer to present a legitimate and non-discriminatory reason for the employment action. *Id.* On such a showing, the burden then shifts back to the plaintiff to show that the employer's proffered reason is a pretext for discrimination. *Id.*

Ms. Chandler correctly notes that MEI does not argue that she "cannot meet the first three elements" of her *prima facie case*. Pl.'s Br. at 17. Indeed, Ms. Chandler was seventy-one years old at the time of her termination, she was meeting MEI's legitimate expectations, and she suffered an adverse action when her employment was terminated in July 2012. Rather, MEI argues that she cannot meet the fourth prong of the indirect method under either a traditional RIF analysis or a mini-RIF analysis. The Court disagrees.

To begin, the Court believes that the mini-RIF analysis is more appropriate in Ms. Chandler's case:

> In a mini-RIF, a single employee is discharged and his position is not filled. However, the employee's responsibilities are assumed by other members of the

4

> corporate workforce. Because of the fear that employers might misuse the RIF description to recharacterize ordinary terminations as reductions in force when they terminate an individual with a unique job, we have dispensed with the requirement that the plaintiff show "similarly situated" employees who were treated more favorably. Instead, because the fired employee's duties are absorbed by other workers and the employee was replaced, not eliminated, we only require that a plaintiff demonstrate that his duties were absorbed by employees who were not members of the protected class.

*Id.* (internal citations and quotation marks omitted). It is undisputed that Ms. Chandler's responsibilities were assumed by Westerman and Latta. *See* Dkt. No. 33-7 at 10 ("Plaintiff's position has not been refilled. Nancy Latta and Beverly Westerman handle all receptionist duties for the Evansville office."). Therefore, in order to satisfy the fourth prong of her *prima facie* case, Ms. Chandler needs to present evidence that her duties were absorbed by employees who were not members of the protected class, i.e. under the age of forty. *See Richter v. Hook-SupeRx, Inc.*, 142 F.3d 1024, 1028 (7th Cir. 1998) (noting that "the protected class" for an ADEA claim is "age 40 or over"). MEI argues that Ms. Chandler cannot satisfy this because Westerman was fifty and Latta was over the age of sixty at the time of Ms. Chandler's termination. However, the Seventh Circuit has noted that "[g]enerally, when both the plaintiff and those allegedly favored over [her] are within the same protected class, the *prima facie* case under the ADEA require[s] a sufficient disparity in ages. This court consider[s] a ten year difference in ages (between the plaintiff and [her] replacement) to be presumptively substantial." *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 (7th Cir. 2001) (internal citations and quotation marks omitted). As Westerman was twenty-one years younger than Ms. Chandler at the time of her termination, the Court finds that Ms. Chandler has satisfied this prong of her *prima facie* case.

Viewing the facts in the light most favorable to Ms. Chandler, therefore, the Court finds that she has satisfied her *prima facie* case for age discrimination. The Court thus turns to

whether MEI has asserted a legitimate and non-discriminatory reason for the employment action.[2]

MEI has asserted that it "terminated Ms. Chandler and several other MEI employees in a reduction in force, which was necessary due to the financial challenges facing MEI in early 2012." Def.'s Br. at 32. Specifically it notes the following:

> Much uncertainty plagued the medical and pharmaceutical industry MEI serviced following the enactment of the Patient Protection and Affordable Care Act in 2010. The uncertainty led to a severe decline in MEI's business income, the worst of which occurred in the first six months of 2012. By the end of March 2012, MEI senior leadership began meeting to discuss cost-reducing strategies. By June, MEI had suffered a loss in excess of $240,000.00. During the first five months of 2011, the preceding year, MEI had experienced a significantly smaller loss of approximately $77,000.00. In 2010, MEI achieved a net profit for the first five months of the year in excess of $400,000.00. Of particular concern to MEI's leadership was that MEI had only recently consummated a new banking relationship for its line of credit. The managers were concerned that the bank could ultimately feel insecure about MEI's financial strength and decrease or otherwise restrict its line of credit, which was critical for MEI's ongoing operations. MEI also saw a decrease in the number of purchase orders by the end of April 2012, and had forecast an expected decline of nearly thirty-five percent (35%) of its revenues over the prior calendar year.

Def.'s Br. at 25-26. The Court finds that MEI's stated financial reasons provide a legitimate basis for the need to reduce its staff. MEI has succeeded in proffering a legitimate and non-discriminatory reason for terminating Ms. Chandler's employment. Thus, the burden shifts back to Ms. Chandler to show that MEI's proffered reason is a pretext for discrimination.

"To demonstrate a material issue of fact as to pretext, [Ms. Chandler] must show that 'either 1) it is more likely that a discriminatory reason motivated the employer than the proffered

---

[2] MEI is correct that because Ms. Chandler was hired and fired by the same individual—Hall—there is an inference of nondiscrimination. *See Ritter v. Hill 'N Dale Farm, Inc.*, 231 F.3d 1039, 1044 (7th Cir. 2000) ("A similar inference of nondiscrimination can also be made from the fact that [the plaintiff] was hired and fired by the same individual []. Although these facts do not foreclose a finding of discrimination, they do create an inference of nondiscrimination.") (internal citations omitted).

non-discriminatory reason or 2) that an employer's explanation is not credible.'" *Mullin v. Temco Mach., Inc.*, 732 F.3d 772, 778 (7th Cir. 2013) (quoting *Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)). However, "[a]n inquiry into pretext requires that we evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) (citations omitted). In other words,

> [p]retext involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is lie, specifically a phony reason for some action. Thus, in assessing a plaintiff's claim that an employer's explanation is pretextual, we do not sit as a "super personnel review board" that second-guesses an employer's facially legitimate business decisions. Rather, we ask only whether the employer's explanation was "honestly believed."

*Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (citations and internal quotation marks omitted); *see also Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) ("An unwise employment decision does not automatically rise to the level of pretext; rather, a party establishes pretext with evidence that the employer's stated reason or the employment decision 'was a lie—not just an error, oddity, or oversight.'") (quoting *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010)). Moreover, one court has noted that "an employer's decision in a period of economic downturn to let one employee go and to divide that employee's duties among other existing employees plainly poses a much greater hurdle for a pretext argument than a decision to hire a younger person to supplant an older employee." *Hansen v. Crown Golf Properties L.P.*, 826 F. Supp. 2d 1118, 1121 (N.D. Ill. 2011). With this in mind, the Court turns to Ms. Chandler's arguments.

First, Ms. Chandler alleges that "[s]ome of the individuals alleged to be terminated due to the reduction in force were terminated prior to the time the Defendant began to discuss the need for a reduction in force." Pl.'s Br. at 20. Ms. Chandler asserts that MEI decided that a RIF was needed in June 2012; however, some of the eleven employees allegedly terminated due to the

7

RIF were terminated prior to June 2012. She argues, therefore, that MEI "attempts to include individuals who were laid off prior to the time the reduction in force was determined to be necessary to strengthen their argument that the terminations were valid and indeed due to a reduction in force." Pl.'s Br. at 20-21. The Court fails to see the import of this argument and how it illustrates that Ms. Chandler was really terminated due to her age. Nevertheless, Ms. Chandler ignores the fact that MEI was experiencing a financial decline early in 2012 and held several meetings prior to the ultimate decision to undergo a RIF. In all, the Court finds nothing disingenuous or deceitful in MEI asserting that eleven employees were terminated in 2012 as part of a RIF.

Ms. Chandler's next three arguments are somewhat related. She argues that: 1) "[t]he 'substantially younger' individuals laid off in the reduction in force have been returned to work with the Defendant"; 2) "[t]he Defendant has hired four (4) receptionists all under the age of forty (40) since the date of Ms. Chandler's termination without returning Ms. Chandler to work"; and 3) "[t]he Defendant has hired seven (7) other 'substantially younger' employees into exact positions Ms. Chandler previously held since the date of Ms. Chandler's termination without returning Ms. Chandler to work." Pl.'s Br. at 21-23. That the majority of returning employees and new hires were younger than Ms. Chandler does raise some concerns in analyzing MEI's proffered reason for terminating Ms. Chandler's employment. However, ultimately the Court does not believe that MEI's subsequent hiring practices carry the day for Ms. Chandler, given that she has to prove pretext by a preponderance of the evidence.[3]

---

[3] The Court also notes that the four new receptionists were all hired to work in MEI's Chicago office, not Evansville. With regard to the seven individuals who filled positions that Ms. Chandler previously held, MEI notes that "[a]lthough Chandler had prior experience in a number of other areas within MEI, she had not been in those positions for some time and was not

8

Finally, Ms. Chandler argues that "[t]he overall expense to the company for salaries did not change significantly in 2012 and increased greatly in 2013," and that MEI "knew there would likely be a financial recovery in the later part of 2012." Pl.'s Br. at 23-24. These arguments, however, are quibbles with MEI's business decision to undergo a RIF. As the Seventh Circuit has noted, "courts are not superpersonnel department[s] charged with determining best business practices." *Stockwell v. City of Harvey*, 597 F.3d 895, 902 (7th Cir. 2010) (internal quotation marks omitted). "The main inquiry in determining pretext is whether the employer honestly acted on the stated reason rather than whether the reason for the [RIF] was a correct business judgment." *Atanus v. Perry*, 520 F.3d 662, 674 (7th Cir. 2008) (internal quotation marks omitted). Simply put, Ms. Chandler has failed to demonstrate that MEI did not honestly believe the RIF was necessary. *See Stockwell*, 597 F.3d at 902 ("[W]e must remember that, even if the business decision was unreasonable, pretext does not exist if the decisionmaker honestly believed the nondiscriminatory reason.").

The fact that MEI has hired younger individuals since terminating Ms. Chandler—who was seventy-one years old at the time—is simply not enough to prove that MEI's proffered reason for the RIF is a pretext for age discrimination. Accordingly, MEI's motion for summary judgment with respect to Ms. Chandler's age discrimination claim is **GRANTED**.

### B. Retaliation

Ms. Chandler also contends that MEI refused to rehire her in retaliation for filing her EEOC charge and formal complaint. Title VII prohibits retaliation by an employer where an employee "has opposed any . . . unlawful employment practice" or "has made a charge, testified,

---

considered to be highly skilled in those areas or able to handle high volume in those areas[.]" Def.'s Br. at 12.

assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a).  Like discrimination claims, a plaintiff may establish a prima facie case of retaliation under the direct or indirect method. *Argyropoulos v. City of Alton*, 539 F.3d 724, 733 (7th Cir. 2008).  Under the direct method, the plaintiff must present evidence that:  1) she engaged in a statutorily protected activity; 2) she suffered a materially adverse action; and 3) that there is connection between her protected activity and the adverse action. *Id.*  Under the indirect method, the plaintiff must present evidence that:  1) she engaged in a statutorily protected activity; 2) she applied and had the qualifications required for the position; 3) she was not hired for the position; and 4) a similarly situated individual who did not engage in statutorily protected activity was hired for the position. *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 812 (7th Cir. 2005).  If a plaintiff presents such evidence, the burden shifts to the defendant to offer a legitimate, non-retaliatory reason for not hiring the plaintiff for the position. *Id*.

Ms. Chandler moves for summary judgment on this claim, arguing that she can prove her *prima facie* case under either method[4] and "that there is no genuine issue of material fact in dispute as to the Defendant's retaliatory motive not to return Ms. Chandler back to work[.]" Pl.'s Br. at 28.  She bases this on certain comments Hall made during her deposition.  MEI disagrees, moving for summary judgment on this claim as well.

Ms. Chandler clearly engaged in protected activity when she filed a charge of discrimination with the EEOC against MEI. *See Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015) ("There is no dispute that [the plaintiff] satisfied the first element, as her formal EEOC charges were the most obvious form of statutorily protected activity." (internal

---

[4] While Ms. Chandler alleges she can survive summary judgment under either the direct or indirect method, the Court need not examine the indirect method having found she satisfied her burden under the direct method.

quotation marks omitted). Ms. Chandler also argues that she "suffered an adverse employment action when she was not returned to work as the other individuals who were laid off in the reduction in force were, and that [she] was not hired when she applied for a posted open Coordinator position with the Defendant in 2013." Pl.'s Br. at 29. The Court agrees, and MEI does not argue otherwise. *See Greengrass*, 776 F.3d at 485-86 (noting that actions that "dissuade[] a reasonable worker from making or supporting a charge of discrimination" are "the essence of a materially adverse employment action") (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)). The parties differ, however, on whether Ms. Chandler has satisfied the last element of the direct method—the causal connection.

As noted above, Ms. Chandler bases her retaliation claim on comments Hall made during her deposition. Hall noted that several employees who were terminated during the RIF had returned to employment with MEI:

> I know that we called most of them back, *with the exception of the two that filed suit*. So I believe—I know Sarah Goines had come back, Michele Hobbs is back, Amber Reuter is back. I guess that's why you're jumping over them. But I don't know if Linda Cross is back or not.

Hall Dep. at 57: 4-9 (emphasis added). She also noted that she "would never call someone back to work that said I was—that filed a suit against me. Would you?" *Id*. at 86: 1-2. Finally, Hall stated that despite Ms. Chandler applying for open positions at MEI, "[s]he would not be considered because she's filed a lawsuit against us." *Id*. at 97: 1-2. Ms. Chandler thus argues that "[t]he direct and retaliatory statements made by Hall are strong evidence and create the required connection between Chandler's protected activity and her adverse employment action, which was the Defendant's failure in returning her to work." Pl.'s Br. at 27.

MEI disagrees, arguing that "these statements are not controlling because Chandler's position has not been refilled and Hall did not participate in the actual decisionmaking with

11

regard to the position for which Chandler applied." Def.'s Br. at 31.  MEI argues that Ms. Chandler simply speculates that Hall "made decisions concerning hiring of new employees subsequent to the RIF or the re-hire of various persons subject to the RIF," and that her "unsupported and speculative belief is insufficient" at the summary judgment phase. Def.'s Resp. at 16.

The Court disagrees that Ms. Chandler merely speculates that Hall played a role in hiring decisions post-RIF.  To begin, Hall was the person who hired, promoted, and terminated Ms. Chandler; she has—in the past—played an active role in employment decisions.  Moreover, Ms. Chandler notes that a chart produced by MEI in discovery lists Hall as having made other hiring decisions since the RIF. *See* Dkt. No. 39-6 at 4-5.  MEI does not dispute these facts.  Based on the record before the Court, MEI's assertion that Hall played no role in hiring decisions pertaining to Ms. Chandler after the 2012 RIF is an issue of fact that must be resolved by a jury.[5]  Accordingly, MEI's motion for summary judgment on Ms. Chandler's retaliation claim is **DENIED**.  For the same reasons noted above, Ms. Chandler's motion for summary judgment on her retaliation claim is also **DENIED**.

### IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment (Dkt. No. 31) is **GRANTED** as to the Plaintiff's age discrimination claim and **DENIED** as to her retaliation claim.  The Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 39) is **DENIED**.

---

[5] Ms. Chandler also argues that Hall's view that no one who filed suit against MEI was welcome back at the company was a policy instituted by Hall. *See* Pl.'s Br. at 39 ("[I]t appears that Hall has instituted a policy within her company and it is well known that anyone who files a lawsuit against the Defendant will not ever be returned to work with the Defendant.").  Whether or not this is true hinges on credibility assessments and issues of fact that also must be resolved by a jury.

**The three-day jury trial in the cause will be held on Tuesday, October 13, 2015, at 9:00 a.m. in Room 301 of the Winfield K. Denton Federal Building & U.S. Courthouse, located at 101 Northwest Martin Luther King Boulevard, Evansville, Indiana.**

**The final pretrial conference will be held on Friday, September 11, 2015, at 2:00 p.m. in Room 202 of the Birch Bayh Federal Building & U.S. Courthouse, located at 46 East Ohio Street, Indianapolis, Indiana. The parties are reminded of their pretrial preparation deadlines (Dkt. Nos. 12, 13).**

SO ORDERED: 4/14/15

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel via electronic notification