UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| MARYBELLE CHANDLER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MEETINGS & EVENTS )<br>INTERNATIONAL, INC., )<br>)<br>Defendant. ) | 3:13-cv-200-WGH-WTL |

**ORDER ON DEFENDANT'S MOTION FOR NEW TRIAL ON DAMAGES, OR ALTERNATIVELY, FOR REMITTITUR**

This matter is before me, William G. Hussmann, Jr., United States Magistrate Judge, by Consent of the Parties, Filing No. 59, Filing No. 60, and on the Order of Reference issued by District Judge William T. Lawrence on August 28, 2015, Filing No. 61.

The issue of liability and legal damages for a claim of retaliation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(d), was tried by a jury on October 13 and October 14, 2015. The jury found the Defendant liable, and awarded Plaintiff Sixty-Eight Thousand Dollars ($68,000) in compensatory damages based on diminution in earning capacity and emotional distress. Filing No. 84. The Defendant has filed a Motion for New Trial on Damages, or Alternatively, for Remittitur. The matter is now fully briefed. Filing No. 99, Filing No. 101, Filing No. 103.

Separately, and after a hearing on the issue of back pay, the Court awarded Fifty-Six Thousand Eight Hundred Fifty-Four Dollars ($56,854). After both parties briefed the issue, Filing No. 91. Filing No. 92. Filing No. 93, the Court also awarded liquidated damages of Fifty-Six Thousand Eight Hundred Fifty-Four Dollars ($56,854). This opinion will proceed to consider the decision to remit the jury award.

## I. Discussion

Three questions are asked when reviewing a jury's compensatory-damage award: (1) is there a rational connection between the award and the evidence; (2) is the award roughly comparable to awards made in similar cases; and (3) is the award monstrously excessive? *Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058, 1066 (7th Cir. 2001). The request for a new trial and for remittitur are both reviewed under this standard. *See ATA Airlines, Inc. v. Fed. Express Corp.*, 2011 U.S. Dist. LEXIS 5638, *2-3 (S.D. Ind. Jan. 19, 2011) ("Pursuant to Federal Rule of Civil Procedure 59, the court may award a new trial if the verdict is not rationally connected to the evidence, if it is born out of passion and prejudice, or if it is monstrously excessive."). In asking these questions, the Court must consider the evidence in the light most favorable to the Plaintiff. *See Riemer v. Illinois Dep't of Transp.*, 148 F.3d 800, 808 (7th Cir. 1998). The Court will consider each part of the issue in turn.

The Final Jury Instructions told the jury to consider the following in determining a compensatory damage award: (1) "physical and mental or emotional pain and suffering that Plaintiff has experienced and is reasonably

certain to experience in the future"; (2) "any expenses, other than lost pay, that Plaintiff reasonably incurred or will incur in the future as a direct result of the Defendant's retaliation"; and (3) "any loss, other than lost pay, caused by Defendant in Plaintiff's future earning capacity." Filing No. 83 at EFC pp. 16-17. Plaintiff did not testify to any physical suffering nor to any "other" kind of loss. Therefore, a reasonable jury decision would have to be based on only (1) emotional suffering and (2) diminution in earning capacity. These two sources of injury must each be considered as the three-part test is applied.

### a. Is there a rational connection between the award and the evidence?

Considering first the diminution in earning capacity, both Plaintiff and Defendant use 63 weeks as a maximum time frame from Plaintiff's recovery. This number counts the weeks between the trial date and Plaintiff's anticipated retirement date. Defendant calculates that $370 is the maximum diminution in Plaintiff's weekly lost earning capacity. They arrive at $370 by subtracting Plaintiff's current weekly wage of $230 from the $600 per week that the Court used in calculating Plaintiff's back pay. The Court found that if MEI had rehired Plaintiff, the position would have paid $31,200 per year. This amounts to $600 per week. This is because I believed that the financial position of the company at the time of this potential rehiring would likely have caused MEI to ask the Plaintiff to take a reduction in pay. The evidence presented by the Defendants regarding the economic position that MEI was in, which led to the reduction in force where Plaintiff lost her job, makes it seem likely that MEI

3

would have offered this reduced salary in an effort to remain profitable. However, the jury could have reasonably determined that Plaintiff's loss in earning capacity should be determined from the amount that she was actually being paid before her termination. Plaintiff uses this number, $920 per week, in its argument. However, Plaintiff's argument does not account for the $230 per week the Plaintiff earns at her current job.

A reasonable jury could have determined that Plaintiff's diminution in earning capacity should be based on the amount she was being paid before being terminated less the amount she is being paid at her current job. This would be $920 per week less $230 per week (Plaintiff's current wage) for a total of $690 per week. As both Plaintiff and Defendant use 63 weeks as the time frame that diminution in earning capacity could be based on, the Court will also use this number. A reasonable jury could have then multiplied a loss of $690 per week by 63 weeks for a total loss in earning capacity of $43,470. This number can be reasonably derived from the evidence presented.

Calculating emotional harm is a bit more nebulous. In considering emotional distress, I will continue assuming a reasonable jury could have awarded at most $43,470 for diminution of earning capacity. This leaves $24,530 of the jury award for emotional distress. Plaintiff admittedly presented little evidence to support an award for emotional distress. She testified that she was depressed and humiliated from losing her job that she had worked at work such a long time, that she was upset at learning of the retaliatory intent of the boss she had considered a friend, and that it was humiliating to explain why

4

she lost her job and to look for a job. While it is difficult for the Court to determine what a "reasonable" award for such an injury is, we can at least begin by looking at the evidence presented regarding how long Plaintiff experienced these emotions.

The "[d]amages should ordinarily extend only to the date upon which 'the sting' of any discriminatory conduct has ended." *McKnight v. Gen. Motors Corp., 973 F.2d 1366, 1371 (7th Cir. 1992)*. Defendant argues that this aspect of the compensatory damage award is limited to a two (2) week time span. This ranges from the time Plaintiff learned of the retaliatory intent to when she received her current job. I find that a reasonable plaintiff could have, at best, started accruing emotional distress damages from the time that Plaintiff learned of the retaliation. These damages could have continued into the future though, even past the Plaintiff's trial. While it seems reasonable that Plaintiff's emotional distress would decrease when she received her current job, it is also reasonable to understand she was still suffering some injury until her projected retirement age. She continued to look for work, she only worked a part-time job, and she no longer gets to retire from the job she held for many years and thought she would keep until the end of her career.

Determining the reasonableness of emotional distress damages is difficult given the inherently subjective nature of the damage. I see the reasonableness of this part of the award being best determined in its relation to other awards in similar cases. This will be discussed in the following section.

### b. Is the award comparable to awards made in similar cases?

Defendant cites to two cases where the emotional distress damages were lowered. In *Nekolny v. Painter* the Seventh Circuit found that "[a] single statement by a party that he was 'depressed,' 'a little despondent,' or even 'completely humiliated' (the latter in the context of explaining why other employment was not sought)" was not enough to support any award for emotion distress and reversed the award of damages. 653 F.2d 1164, 1173 (7th Cir. 1981). In *Avitia v. Metropolitan Club*, the Seventh Circuit also remitted an award of $21,000 for "pang of distress at being fired" to $10,500, finding that the jury award was excessive. 49 F.3d 1219, 1229-30 (7th Cir. 1995). As Defendant points out, these awards consider only the emotional distress and not the diminution of earnings aspect of damages.

I have reviewed the compensatory damage awards previously given in employment law cases in the Southern District of Indiana. Looking at cases where a jury awarded damages that were entered as final judgment without adjustment, the awards range from $5,000 to $35,048.30.[1] This puts an award of $24,530 for emotional distress within that range. Therefore, while

---

[1] Listed from lowest award to highest award: *Randolph v. Carpenters Union*, 2:03-cv-92-LJM-WGH (Jan. 2007) (McKinney, J.) ($5,000 compensatory damages in sex discrimination case); *Stanton v. AutoZone*, EV 96-149-C-Y/H (June 1999) (Young, J.) ($10,000 compensatory award in sex discrimination case); *Pine v. Crow*, TH 00-48-C-T/H (May 2001) (Tinder, J.) ($14,800 compensatory award in age discrimination case); *O'Neal v. City of New Albany*, NA 98-18-C-G/H (Apr. 2003) (Godich, J.) ($21,500 compensatory award in race discrimination case); *Westall v. BLM-RH, Inc.*, 4:08-cv-18-DFH-WGH (Nov. 2009) (Hamilton, J.) ($27,000 compensatory award in age discrimination case); *Mack v. Great Dane Trailers*, TH 98-303-C-M/H (Jan. 2001) (McKinney, J.) ($35,000 compensatory award in religious discrimination case); *Horn v. Indiana Dep't. Corrections*, (TH 01-47-C-H/T) (April 2002) (Hussmann, J.) ($35,048.30 compensatory award in sex discrimination case).

higher than some might have given in this case, the emotional distress damage figure is comparable to those given by juries in other cases.

### c. Is the award monstrously excessive?

When Courts have remitted jury awards, they remit by at least halving the damage award, and sometimes by shrinking the award much more than that. *See e.g. David v. Caterpillar,* 324 F.3d 851, 864 (7th Cir. 2003) (remitting an award of $100,000 in compensatory damages to $50,000); Avitia, 49 F.3d at 1229-30 (remitting $21,000 for "pang of distress at being fired" to $10,500). The same holds true for decisions in this District. *E.g. Tincher v. Wal-Mart*, TH 93-175-C-H/R (Oct. 1995) (a jury awarded $250,000 in punitive damages and I remitted to $90,000); *Branham v. Burlington Motor Carriers*, NA 97-163-C-D/S (May 2000) (Shields, J.) (remitting $360,000 in compensatory damages to $46,800). This suggests that monstrously excessive means a figure at least twice what it could reasonably be.

I do not find that $24,530 for emotional distress is twice what a reasonable jury could award. While this award may be described as "surprising," "generous," or "high," it is within a comparable range of jury awards and does not seem to shock the conscious. As I can make some reasonable sense of how a jury could have arrived at the total $68,000 award that they granted, I cannot find that the award requires remittitur.

7

## II. Conclusion

For the foregoing reasons, the Motion for New Trial on Damages, or Alternatively, for Remittitur is **DENIED**. The jury's award of $68,000.00 in compensatory damages to the Plaintiff remains undisturbed.

**SO ORDERED** the 20th day of January, 2016.

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

**Served electronically on all ECF-registered counsel of record.**